IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 24-cv-01846-CNS

CRAIG MARTIN STICE,

    Applicant,

v.

BERGMAN, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

---

Applicant Craig Martin Stice has filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, challenging the validity of his judgment of conviction in Arapahoe County District Court Case No. 17CR1964. Having considered the Application, Respondents' Answer, ECF No. 33, Applicant's Reply Brief, ECF No. 34, and the state court record, the Court DENIES the Application.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

The Colorado Court of Appeals (CCA) summarized the facts of Applicant's case as follows:

> At trial, the People presented evidence from which the jury could find the following facts. The victim's father lived at Stice's house. For about two years, the victim spent every other weekend with her father at Stice's house. The victim often spent the night. Stice was usually the first one awake in the morning, followed by the victim. On many of these

1

> mornings, Stice sexually assaulted the victim in a reclining chair in his living room.
> Stice initiated the assaults by asking the victim if she wanted to learn about the human body. Stice then touched and described body parts until he was touching the victim's vagina and breasts. Stice also made the victim touch his penis. The victim testified that this abuse happened repeatedly, at the same time of day, in the reclining chair. The victim was eight years old when the sexual abuse began.
>
> After Stice's conduct was reported to the police, a police detective asked the victim's father to make a pretextual phone call to Stice to obtain inculpatory statements. The victim's father agreed and called from his cell phone. The detective recorded the call. Stice did not know the police were listening to the call or recording it.
>
> Stice answered the call while driving to work. After the victim's father asked Stice repeatedly whether he had inappropriate contact with the victim, Stice stated that they had hugged, but nothing more. Stice repeatedly stated that he "wasn't going to say anything" and repeatedly asked whether the victim's father wanted him to go to jail. Stice eventually hung up. The call lasted about five minutes.
>
> The prosecution charged Stice with four counts of sexual assault on a child by one in a position of trust as a pattern of abuse, and four counts of sexual assault on a child as a pattern of abuse. The jury convicted Stice on all counts.

ECF No. 12-5 at 2–3.

The trial court sentenced him to 14 years to life in prison. ECF No. 12-1 at 13. Applicant appealed, and the CCA affirmed his conviction and sentence. ECF No. 12-5. The Colorado Supreme Court (CSC) denied his petition for writ of certiorari. ECF No. 12-6.

Applicant then filed a motion to reconsider his sentence under Colo. Crim. P. Rule 35(b), which the court denied. ECF No. 12-1 at 4–8. Applicant did not appeal. *Id.* He also

sought postconviction relief under Colo. Crim. P. Rule 35(c), which the postconviction court denied as well. *Id.* at 4. Applicant appealed this decision, the CCA affirmed the order denying relief, and the CSC denied certiorari review. ECF No. 12-7; ECF No. 12-10; and ECF No. 12-11.

In the Application filed pursuant to 28 U.S.C. § 2254, Applicant asserts that his Sixth Amendment rights were violated because trial counsel was ineffective on the following three grounds:

    (1)    Trial counsel failed to obtain medical records and present Applicant's "medical vulnerabilities" to the jury in connection with a pretext call with the victim's father that was admitted as evidence against him.

    (2)    Trial counsel failed to impeach the inconsistent testimony of A.Q.

    (3)    Trial counsel failed to present evidence of a prior alleged victim's medical report from an earlier sexual assault trial where Applicant was acquitted.

ECF No. 1 at 7–11.

On October 17, 2024, the Court directed Respondents to file an Answer fully addressing the merits of the claims asserted in the Application. *See* ECF No. 19. Respondents submitted their Answer on December 18, 2024. *See* ECF No. 33. On January 10, 2025, Applicant filed his Reply. ECF No. 34.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The applicant bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011). In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id*. at 98. Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id*. at 99. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. at 98. In other words, this Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the Court's] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light

of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id*.

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time of the relevant state court decision. *See Greene v. Fisher*, 565 U.S. 34 (2011). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision. *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams v. Taylor*, 529 U.S. 362, 404–05 (2000).

> A state-court decision is contrary to clearly established federal law if: (a) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or (b) the state court confronts a set of facts that are materially

5

> indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent. *Maynard* [*v. Boone*], 468 F.3d [665], 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court

> to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision and then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Harrington*, 562 U.S. at 88 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 562 U.S. at 102.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court.

Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller- El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The federal habeas court applies a *de novo* standard of review to constitutional claims that were not reviewed on the merits by the state courts. *See Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001).

### III.  ANALYSIS OF APPLICANT'S INNEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

As noted above, Applicant asserts the following three ineffective assistance of counsel claims:

(1)  Trial counsel failed to obtain medical records and present Applicant's "medical vulnerabilities" to the jury in connection with a pretext call with the victim's father that was admitted as evidence against him.

(2)  Trial counsel failed to impeach the inconsistent testimony of A.Q.

(3)  Trial counsel failed to present evidence of a prior alleged victim's medical report from an earlier sexual assault trial where Applicant was acquitted.

ECF No. 1 at 7–11.

The Sixth Amendment generally requires that defense counsel's assistance to the criminal defendant be effective. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner

must show both that (1) his counsel's performance was deficient—i.e., that identified acts and omissions were outside the wide range of professionally competent assistance, and, (2) he was prejudiced by the deficient performance—i.e., that there is a reasonable probability that but-for counsel's unprofessional errors the result would have been different. *Id.*

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). *See also Wiggins v. Smith*, 539 U.S. 510, 521 (2003). In other words, there is a rebuttable presumption that "an attorney acted in an objectively reasonable manner and that an attorney's challenged conduct might have been part of a sound trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (emphasis omitted). "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The federal habeas court's review of the state appellate court's disposition of an ineffective assistance claim under the AEDPA is "doubly deferential." *Cullen,* 563 U.S. at 190. This means that the court "defer[s] to the state court's determination that counsel's performance was not deficient and, further, defer[s] to the attorney's decision in how to best represent a client." *Grant v. Royal*, 886 F.3d 874, 903 (10th Cir. 2018) (internal quotation marks and citations omitted).

"With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 693.

In rejecting Applicant's ineffective effective assistance of counsel claims in postconviction proceedings, the CCA set forth the *Strickland* standard as follows:

> To sufficiently allege a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must (1) "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment" (the deficiency prong), *id.* at 690; and (2) "assert facts that, if true, show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the prejudice prong), *People v. Timoshchuk*, 2018 COA 153, ¶ 22. When the allegations in a defendant's Crim. P. 35(c) ineffective assistance of counsel claim (1) are bare and conclusory; (2) would fail to establish one or the other prong of the *Strickland* test, even if true; or (3) are directly refuted by the record, the postconviction court may deny the claim without appointing counsel or conducting an evidentiary hearing. *People v. Duran*, 2015 COA 141, ¶ 9; *see* Crim. P. 35(c)(3)(IV); *see also Silva*, 156 P.3d at 1168.

ECF No. 12-10 at 4-5.

### A. Claim One: "Medical Vulnerabilities before Pretext Call"

Applicant first challenges counsel's failure "to obtain [his] medical records and present [his] mental vulnerabilities," including a prior traumatic brain injury and the "taking [of] Donepezil (Aricept) for memory loss at the time of the [pretext] call" with the victim's father. ECF No. 1 at 7–8.

1. *State court proceedings*

In postconviction proceedings, Applicant claimed "that his counsel's performance was deficient because counsel failed to obtain medical records and to present evidence of his physical and mental vulnerabilities." ECF No. 12-10 at 8. The CCA found that Applicant failed to allege *Strickland* prejudice. In rejecting this claim, the CCA observed:

> During the investigation of D.M.'s allegations, D.M.'s father initiated a supervised and recorded phone call to Stice from the Arapahoe County Sheriff's Office. Stice was driving to his chiropractic office at the time of the call, and he was not informed that the call was recorded. In the call, D.M.'s father told Stice that D.M. alleged that Stice had touched her inappropriately and asked Stice several times to tell him what happened. Stice admitted that he and D.M. had hugged each other but otherwise refused to talk about it. Stice admitted no criminal acts.
>
> Defense counsel moved to suppress the call, arguing that Stice's statements had been involuntary. After an evidentiary hearing, the trial court found Stice's statements to be voluntary and denied the motion. The prosecution published a redacted version of the recorded call at trial. On direct appeal, a division of this court concluded that the call was admissible because Stice's will was not overborne and there had been no coercive governmental conduct, threats, promises, or evidence that Stice had mental or physical vulnerabilities. *Stice*, No. 19CA0626, slip op. at ¶ 12.
>
> In his postconviction motion, Stice claims that his counsel's performance was deficient because counsel failed to obtain medical records and to present evidence of his physical and mental vulnerabilities.[FN 2] But Stice fails to allege *Strickland* prejudice. He neither alleges any reason why evidence that he suffered symptoms from a car accident would have persuaded the trial court that his statements were involuntary nor asserts facts showing that he probably would have been acquitted if the phone call had been suppressed. His belated and conclusory assertion on appeal — that with the medical evidence, the pretext call may not have been admitted, which

> could have weakened the prosecution's case and resulted in a different outcome — does not rescue his claim.
>
> We conclude that the postconviction court properly rejected this claim, without a hearing and without appointing counsel, because it is bare and conclusory and fails to allege *Strickland* prejudice. *See People v. Smith*, 2017 COA 12, ¶¶ 25-26; *see also Duran*, ¶ 9; *Silva*, 156 P.3d at 1168.
>
> [FN 2:] Stice alleges that due to a car accident eight months prior to the call, he was taking medication and limited by memory loss and a torn labrum in his hip. As a result, he says, he was anxious, confused, and in severe pain during the call.

*Id.* at 7–8.

### 2. Application of AEDPA standard of review

Applicant does not contend that he is entitled to relief under the "contrary to" component of § 2254(d)(1) because the CCA identified and applied the correct legal standard, *Strickland v. Washington*, 466 U.S. 668 (1984). Applicant also does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018.

Applicant also fails to demonstrate that the state court decision was an unreasonable application of clearly established federal law under § 2254(d)(1). Applicant contends that "[t]he jury should have had a chance to review [his] medical records to determine his vulnerabilities" and "[o]nly then, would the Jury dismiss the pretext call and thus weaken[] the case and hav[e] a *reasonable probability* of a different outcome, meeting the second test of *Strickland*." ECF No. 1 at 8. The Court finds that the CCA reasonably concluded that Applicant's "bare and conclusory" assertion of prejudice falls

short of his burden under *Strickland. See e.g., Ellis v. Raemisch*, 872 F.3d 1064, 1084 (10th Cir. 2017) (finding mere speculation that a defendant has been prejudiced by counsel's conduct is insufficient under *Strickland*); *Hooks v. Workman*, 689 F.3d 1148, 1187 (10th Cir. 2012) (same). Applicant does not demonstrate that trial counsel's failure to obtain medical records and present evidence of his vulnerabilities prejudiced him by depriving him of a fair trial with a reliable result. The Court, thus, finds that the CCA's resolution of this ineffective assistance claim was reasonable under *Strickland.* Ultimately, Applicant has not shown that the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

In addition, Applicant fails to demonstrate that the state court decision involved an unreasonable determination of the facts under § 2254(d)(2). The state court's factual findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1). Applicant specifically challenges the CCA's finding that "there had been no . . . evidence that Stice had mental or physical vulnerabilities." ECF No. 12-10 at 7; ECF No. 34 at 2. The CCA's factual determination, however, is supported by the state court record. *See* Court R. at 175 ("[t]here was no evidence that Defendant had a mental or physical vulnerability immediately prior to the telephone conversation, nor that any such vulnerability was exploited"); Trial Tr. 3/22/2018 at 67–69 (testimony and argument regarding Mr. Stice's mental and physical condition during pretext phone call during hearing). Applicant does not overcome the presumption of correctness that applies to the CCA's factual finding because he fails to point to "clear and convincing evidence" that would have altered the

state court's factual finding. *Hooks,* 689 F.3d at 1164. In fact, the record refutes Applicant's conclusory allegation of prejudice because Applicant did not confess to any crime in the pretext call. *See* Trial. Tr. 11/16/2018 at 29–30, 37–39. This Court, therefore, finds the state court's conclusion that Applicant's "bare and conclusory" claim failed to allege *Strickland* prejudice was not based upon an unreasonable determination of the facts in light of the record before the state courts.

Even assuming that Applicant's medical records would have shown that he suffered from a traumatic brain injury due to an automobile accident eight months earlier and that he was taking medication for memory loss, this evidence would not necessarily establish that he was suffering from any vulnerability at the time of the phone call, much less that he suffered from a medical vulnerability to a degree that any statements made were involuntary so that the pretext call would have been suppressed, which would have weakened the prosecution's case and resulted in a different outcome.

For these reasons, Applicant is not entitled to federal habeas relief with respect to Claim One.

### B. Claim Two: "Failure to impeach witness A.Q."

Applicant next maintains that trial counsel was ineffective in failing to impeach A.Q. based on inconsistent testimony. ECF No. 1 at 8. He specifically claims that in pretrial proceedings, A.Q. stated "[The victim] told me that this man was doing something bad to her," but during trial she testified that "[The victim] said the man was touching her and he would make her touch him back." (*Id.*). He claims that although defense counsel asked A.Q., "you only mentioned to this police officer that [the victim] told you that she had

touched the man's private parts," there was "no questions to A.Q. about her inconsistent testimony." *Id.* at 8–9. Applicant contends "[t]here would have been a *reasonable probability* that outcome of the trial would have been changed" if defense counsel had confronted "the witness A.Q. about the contradictory remarks." *Id.* at 9.

*1. State court proceeding*

The CCA rejected Applicant's impeachment claim as follows:

> A.Q. testified about what D.M. had divulged to her in third or fourth grade. As relevant here, she testified that D.M. said "this man was touching her in her private areas and he would make her touch him back." Stice alleges that this testimony was inconsistent with A.Q.'s pretrial statements, where A.Q. didn't report that D.M. said the man touched her. He further alleges that defense counsel's performance was deficient because counsel refused to impeach A.Q. about this discrepancy — due to a conflict of interest — and that if counsel had impeached A.Q., a "different outcome of trial could have occurred."
>
> This claim is directly refuted by the record. During A.Q.'s cross-examination, defense counsel asked about her initial phone conversation with a police officer, as follows:
>
>> DEFENSE COUNSEL: Now when you talked with that police officer, you never told him that [D.M.] had told you that this man had actually touched her anywhere; does that sound right?
>>
>> A.Q.: Can you repeat it?
>>
>> DEFENSE COUNSEL: When you talked to that police officer on the phone about what [D.M.] had told you in the cafeteria, you never told the police officer that [D.M.] had actually said that this man touched her?
>>
>> A.Q.: Well, I don't remember. It has been a while.

> DEFENSE COUNSEL: You only mentioned to this police officer that [D.M.] had told you that she had touched the man's private parts?
>
> A.Q.: Yes.
>
> Defense counsel also cross-examined the testifying investigator about this discrepancy.[FN 1]
>
> [FN 1] To the extent Stice contends that A.Q. had previously testified that D.M. said only that Stice "was doing something bad to her" without giving further details, the record refutes his argument.
>
> Because the factual allegations underlying Stice's claim are refuted by the record, we conclude that the postconviction court properly denied the claim without appointing counsel and without a hearing. *See* Crim. P. 35(c)(3)(IV); *Duran*, ¶ 9; *Silva*, 156 P.3d at 1168. Having reached this conclusion, we need not address Stice's assertion that defense counsel operated under a conflict of interest.

ECF No. 12-10 at 5–6.

### 2. Application of AEDPA standard of review

Applicant again fails to demonstrate that the state appellate court's ruling "was contrary to" or "involved an unreasonable application of" *Strickland* under § 2254(d)(1). Moreover, Applicant does not shown that the state appellate court's conclusion involved an unreasonable determination of the facts under § 2254(d)(2).

The CCA specifically determined the record refuted Applicant's argument that defense counsel failed to impeach A.Q. because the record reflected that counsel had adequately questioned A.Q. during trial about conflicting testimony. *See* ECF No. 12-10 at 5–6. The CCA's factual findings are presumed correct and are supported by the state court record, which clearly reflects that defense counsel asked the witness about her

previous inconsistent statements to the police. *See* Trial Tr. 3/22/2018 at 37-55 (A.Q.'s pretrial testimony describing what the victim told her about the sexual abuse); Trial Tr. 11/14/2018 at 252–56 (defense counsel cross-examining A.Q. about previous inconsistent statement); Trial Tr. 11/16/2018 at 47 (defense counsel's closing argument). Applicant fails to explain what more defense counsel should have done, and he has not adequately alleged how any additional impeachment of A.Q. would have changed the outcome of the trial. Thus, he does not present clear and convincing evidence that rebuts the presumption of correctness that attaches to the state court's factual determination.

Accordingly, Applicant is not entitled to federal habeas relief for Claim Two.

**C. Claim Three: "Prior Bad Act Exculpatory Evidence"**

Applicant finally asserts that trial counsel was ineffective in failing to present medical evidence from a previous trial in which Applicant was acquitted of sexually assaulting his daughter. ECF No. 1 at 9–11. He claims that "[h]ad the previous bad act exculpatory evidence been given it would have weakened the case and that a *reasonable probability* of a different outcome of trial would have occurred thus meeting the second prong of *Strickland*." (*Id.* at 10).

*1. State court proceedings*

Applying the *Strickland* standard, the CCA rejected this claim as follows:

> Stice's twenty-six-year-old daughter, C.S., testified that Stice had sexually assaulted her when she was nine years old. She did not remember details about the assault, but she remembered giving a forensic interview, which was played for the jury. The allegations in C.S.'s interview bore a similarity to D.M.'s allegations.

> In his postconviction motion, Stice claims that defense counsel was ineffective for failing to present medical evidence from his 2002 trial. Stice alleges that in the 2002 trial, a doctor's testimony and report indicated that C.S.'s genital exam was consistent with sexual intercourse *but consistent with other explanations as well*. He asserts that if defense counsel had presented this evidence, "the jury would have been more informed about the previous bad act evidence and they may have come to another conclusion." However, he does not explain how counsel's decision not to introduce this minimally relevant and possibly prejudicial evidence was unreasonable or assert facts showing a reasonable possibility that this evidence would have persuaded the jury to acquit him of D.M.'s sexual assault.
>
> We cannot conclude that Stice's bare and conclusory allegations of *Strickland* deficiency and prejudice entitled him to a hearing or appointment of counsel. *See People v. Osorio*, 170 P.3d 796, 799 (Colo. App. 2007). Thus, we conclude that the postconviction court properly rejected this claim.

ECF No. 12-10 at 9–10.

### 2. Application of AEDPA standard of review

Again, Applicant does not contest that the CCA identified the correct governing principle. Instead, he argues that the CCA unreasonably applied clearly established federal law by finding that defense counsel's failure to introduce the medical report was neither deficient nor prejudicial. He also challenges the CCA's factual determination that the medical report was not exculpatory and "possibly prejudicial."

The Court disagrees. The CCA reasonably recognized that the medical report was potentially prejudicial. *See* ECF No. 1 at 9–10 ("The findings are compatible with [C.S.'s] description of sexual abuse" and "Per Dr. Mckenzie Today *consistent w/ sexual intercourse* But // Consistent w/ other explanations as well."). Contrary to Applicant's

position, the statements in the medical report were not exculpatory. *See e.g., Click v. Quarterman*, No. 2:07-CV-0147, 2008 WL 2930312, *6 (N.D. Tex. 2008) (unpublished) (finding nurse's testimony that there was no visible trauma on the victim during her examination and that "such evidence was consistent with the assault of B.C. occurring as alleged, i.e., digital penetration of B.C.'s vagina, and was also consistent with no assaultive contact occurring," was "neither exculpatory nor inculpatory, but merely a nullity, neither helping nor hurting either side"). As such, Applicant's allegations do not demonstrate that the state appellate court's finding was unreasonable.

In addition, it was entirely reasonable for the CCA to conclude that Applicant does not "assert facts showing a reasonably possibility that this evidence would have persuaded the jury to acquit him of D.M.'s sexual assault," and that Applicant's "bare and conclusory allegations of *Strickland* deficiency and prejudice" do not entitle him to relief. ECF No. 12-10 at 9–10.

Giving the state appellate court decision the deference it deserves, this Court has little trouble concluding that Applicant has failed to meet his burden of showing that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. *See Harrington*, 562 U.S. at 102.

Therefore, habeas relief is not available for Claim Three.

### IV.  ORDERS

For the reasons discussed above, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, ECF No. 1, filed by Craig Martin Stice, is DENIED and this action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that no certificate of appealability shall issue because Applicant has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*, 529 U.S. 473, 483-85 (2000). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is DENIED WITHOUT PREJUDICE to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this dismissal would not be taken in good faith.

DATED this 3rd day of March 2025.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge